## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                         No. 3:21-cr-12-BJB

NATHANIEL DURHAM &
PHILLIP BARNES

\* \* \* \* \*

### OPINION

Whether Nathaniel Durham and Phillip Barnes must be sentenced to mandatory 15-year terms of imprisonment turns on whether at least three of their prior convictions were committed on different "occasions" under the Armed Career Criminal Act. *See* 18 U.S.C. § 924(e)(1). Answering that question raises another inquiry familiar to students of our federal courts: who decides? The Supreme Court's recent decision in *Wooden v. United States* discussed this determination, but didn't assign it to either a sentencing judge or lay jury. 142 S. Ct. 1063 (2022).

This question arises under the long shadow of mountains of armed-career-criminal jurisprudence. For more than three decades, courts have stacked precedent upon precedent parsing which offenses qualify as "violent felonies" under § 924(e)(1).[1] In general, that caselaw entrusts the task to sentencing judges. "Now," following *Wooden*, "comes the Occasions Clause." 142 S. Ct. at 1079 (Gorsuch, J., concurring in the judgment). Going forward, many ACCA prosecutions will raise a distinct set of questions regarding whether convictions occurred on "occasions different from one another." § 924(e)(1). Given all the litigation devoted to reconciling ACCA's qualifying-offense provision with the Fifth and Sixth Amendments, criminal practitioners might've expected courts to follow a similar process for the different-occasions inquiry. *See United States v. Hennessee*, 932 F.3d 437, 442–43 (6th Cir. 2019) (inferring Congress intended courts to treat the like provisions alike).

---

[1] *See, e.g., Taylor v. United States*, 495 U.S. 575 (1990); *Shepard v. United States*, 544 U.S. 13 (2005); *Johnson v. United States*, 559 U.S. 133 (2010); *Sykes v. United States*, 564 U.S. 1 (2011), *overruled by Johnson v. United States*, 576 U.S. 591 (2015); *Descamps v. United States*, 570 U.S. 254 (2013); *Mathis v. United States*, 579 U.S. 500 (2016); *United States v. Stitt*, 139 S. Ct. 399 (2018); *Stokeling v. United States*, 139 S. Ct. 544 (2019); *Borden v. United States*, 141 S. Ct. 1817 (2021).

The United States, however, has a different course in mind.  It now invites the courts to conjure a new way for *juries* to answer the different-occasions question while *judges* continue to resolve the qualifying-offense question under the same statutory subsection.  And it does so despite the Government's historical position that the Fifth and Sixth Amendments tolerate limited judicial decisionmaking based on the fact of a prior conviction.  *See, e.g.*, *United States v. Schumaker*, 820 F. App'x 378, 382 (6th Cir. 2020).  The Government has adopted this position, moreover, without citing a single judicial decision (either before or since *Wooden*) in support.

That Supreme Court opinion expressly declined to address the constitutional question the United States suddenly considers foreordained.  *See* 142 S. Ct. at 1068 n.3.  The Government's new approach would introduce bifurcated trials, vague instructions, and lay-juror translations of arcane state-court records to ACCA cases.  Principles of statutory interpretation, federalism, and evidentiary prejudice all counsel hesitation before striking out on this unmarked path.  But the United States is right that the opposite approach raises a serious constitutional question as well: to what extent may judges, consistent with the Fifth and Sixth Amendments, effectively find facts regarding the "who, when, and where" of prior convictions?  *United States v. King*, 853 F.3d 267, 274 (6th Cir. 2017); *see generally Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Those limitations on judicial factfinding are ones that existing ACCA doctrine purports to respect—though some find that approach unpersuasive.  Following *Wooden*, those dissenting views may well prove right.  But the United States offers no reason why this Court should (or even may) upend the prevailing practice in run-of-the-mill ACCA cases like this one.  And by failing to defend that approach, the Government consigns judges, prosecutors, and defendants alike to continuing uncertainty regarding important federal prosecutions and criminal sentences.

## I.  Who Decides?

### A.  Prior Convictions under ACCA and the Fifth and Sixth Amendments before *Wooden*

ACCA mandates a sentencing enhancement for some repeat felons later convicted for possessing a firearm.  The prior convictions must be a "violent felony" or "serious drug" offense, and must have occurred on at least three different occasions. § 924(e)(1).  The Fifth and Sixth Amendments, according to the Defendants and the Government, require a jury rather than a judge to determine whether their prior qualifying offenses occurred on different occasions.  They point to the Supreme Court's holding in *Apprendi* that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.  But that same decision recognized an exception to this rule for the "fact of a prior conviction," which needn't be submitted

to a jury. *Id.* This exception is widely attributed to the Court's opinion in *Almendarez-Torres v. United States*: if the mere fact of a prior conviction authorizes a court to enhance a defendant's sentence, then that fact needn't be charged in the indictment or submitted to a jury because it is not an "element" of the offense. 523 U.S. 224, 226–27, 239 (1998).

Courts have grappled with the difficulties of identifying and proving a "violent felony" for years. Congress defined the term to include any felony that "is burglary, arson, or extortion," or that "has as an element the use, attempted use, or threatened use of physical force against the person of another." §§ 924(e)(2)(B)(i)–(ii).[2]

Does this determination require the government to prove more than the mere fact of a conviction to a jury before the enhancement applies? Not according to the Supreme Court, which has held that judges, rather than juries, are responsible for making the often-complex determination whether a prior offense qualifies. *See Taylor v. United States*, 495 U.S. 575, 602 (1990). Courts may do so by applying the "categorical" and "modified categorical approach"—whose much-maligned details are not necessary to recount here—based on the statute, indictment, and jury instructions to determine whether the prior jury "necessarily had to find" that fact. *Id.*

In *Shepard v. United States*, the Supreme Court identified other case-specific documents that a judge may use to determine whether a prior conviction qualifies under ACCA. 544 U.S. 13, 26 (2005) (extending *Taylor* to guilty pleas as well as jury verdicts). In addition to the charging document and instructions, these include the judgment, plea agreement, a plea-colloquy transcript "in which the factual basis for the plea was confirmed by the defendant," or "some comparable judicial record." *Id.* The Sixth Circuit—even before *Shepard*—held that judges, not juries, answer the different-occasions question. A district judge's determination "that prior felony convictions exist and were committed on different occasion[s]," the court held, "are so intimately related that the 'different occasions' requirement of § 924(e) sufficiently comes within the exception in *Apprendi* for a prior conviction." *United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004). And since *Shepard* the Sixth Circuit has clarified that the "fact of a prior conviction" reaches *beyond* the mere elements of the offense to other "aspects of the character of prior convictions." *United States v. Hollingsworth*, 414 F.3d 621, 623 (6th Cir. 2005). Those facts "so basic as to be implicit in the fact of a prior conviction" include the date of the offense, the defendant's age on the date of commission, and the date of the conviction. *United States v. Johnson*, 440 F.3d 832, 848 (6th Cir. 2006) (quotation omitted). These

---

[2] Congress also defined "violent felony" as any felony that "involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii). In *Johnson*, however, the Court held that so-called "residual clause" unconstitutionally vague. 576 U.S. at 597.

decisions have generally addressed the violent-felony rather than different-occasions question under ACCA. They have, however, allowed judges to make different-occasions determinations without running afoul of the Court's *Apprendi* rulings regarding judicial fact-finding.

But those precedents, like the Defendants' arguments here, implicate a long-running debate regarding the permissible scope of judicial factfinding. Some Justices have insisted, notwithstanding *Almendarez-Torres* and subsequent precedents, that the Government must establish the ACCA requirements set out by Congress by proving those law-intensive questions to a jury beyond a reasonable doubt. The relationship between the constitutional text and history and this exception for the fact of conviction, they maintain, is questionable at best.[3] Certainly the decisions in *Almendarez-Torres* and *Apprendi* do not grapple with the historical and textual basis for this exception. Why shouldn't all facts that enhance a sentence be submitted to a jury? *See, e.g.*, *Mathis v. United States*, 579 U.S. 500, 522–23 (2016) (Thomas, J., concurring) (arguing that "the exception in *Apprendi* was wrong"). And some judges find equally questionable the use of this exception to justify "judicial factfinding involving ACCA's different-occasions requirement." *United States v. Dudley*, 5 F.4th 1249, 1275–77 (11th Cir. 2021) (Newsom, J., concurring in part and dissenting in part) (raising questions under the Sixth Amendment).

Those critiques, however persuasive they may be, have yet to carry the day. The Supreme Court has cabined the prior-conviction exception based on constitutional avoidance. *See Shepard*, 544 U.S. at 16, 25–26 ("limit[ing] the scope of judicial factfinding on the disputed … character of a prior plea" and rejecting the use of "police reports or complaint applications"). The Court's precedents describe "a pragmatic conclusion about the best way to identify generic convictions … while respecting Congress's adoption of a categorical criterion that avoids subsequent evidentiary enquiries into the factual basis for the earlier conviction." *Id.* at 20.

The Sixth Circuit, bound by stare decisis, followed these decisions in holding that judges could consider so-called *Shepard* documents from prior convictions in making the qualifying-offense determination under ACCA. *See United States v. Mahon*, 444 F.3d 530, 535 (2006). And before *Wooden*, at least, the Sixth Circuit squarely held that judges could examine a limited set of court papers—the

---

[3] Indeed, early caselaw may undermine the fact-of-conviction exception. According to two Justices, early caselaw supports "the rule that a crime includes every fact that is by law a basis for imposing or increasing punishment." *Apprendi*, 530 U.S. at 506 (Thomas, J., concurring). "Cases from the founding to roughly the end of the Civil War establish th[at] rule …, applying it to all sorts of facts, including recidivism. As legislatures varied common-law crimes and created new crimes, American courts, particularly from the 1840's on, readily applied to these new laws the common-law understanding that a fact that is by law the basis for imposing or increasing punishment is an element." *Id.* at 501–02.

indictment, plea colloquy, judgment, and other *Shepard* documents.  *See King*, 853 F.3d at 272–73.  This meant judges could look beyond the elements of an offense to examine non-elemental facts that bore on the times and places of prior offenses.  *Id.*

The Court of Appeals reinforced this rule in *Hennessee*, explicitly holding that district courts may "consider both elemental and non-elemental facts contained in *Shepard*-approved documents" when making a different-occasions determination.  932 F.3d at 444.  "Congress sought to avoid mini-trials on ACCA determinations," the court held, such that "the sentencing court *must* be equipped" with these "*Shepard-Taylor* source[s]" "to answer both the ACCA-predicate inquiry and the different-occasions inquiry."  *Id.* at 443.  Applying this approach to one but not the other "would not make sense; it would render violent-felony convictions adjudged together by the same court inseparable in the different-occasions context."  *Id.*  Otherwise the judge would be "hamstrung," given the need under ACCA to examine the "date, time, or location" of prior offenses—not just their elements.  *Id.*  Any "constitutional concern" with judicial factfinding would be "quelled" by restricting the later court "to those facts that necessarily underlie the prior conviction."  *King*, 853 F.3d at 273 (quotation omitted).[4]

Under pre-*Wooden* binding Supreme Court and Sixth Circuit precedent, therefore, the judge is tasked with (or at least permitted to) consider *Shepard* documents regarding prior convictions in applying the ACCA violent-felony and different-occasions questions alike.[5]

---

[4] The Sixth Circuit is hardly an outlier.  *See Dudley*, 5 F.4th at 1277 (Newsom. J., dissenting in part) (collecting cases).  Other circuits that have addressed the issue also reserved this task for the judge rather than the jury.  *See, e.g.*, *United States v. Dantzler*, 771 F.3d 137, 144–45 (2d Cir. 2014); *United States v. Evans*, 738 F.3d 935, 936–37 (8th Cir. 2014); *Kirkland v. United States*, 687 F.3d 878, 883 (7th Cir. 2012); *United States v. Boykin*, 669 F.3d 467, 471 (4th Cir. 2012); *United States v. Sneed*, 600 F.3d 1326, 1332–33 (11th Cir. 2010); *United States v. Thomas*, 572 F.3d 945, 950 (D.C. Cir. 2009); *United States v. Fuller*, 453 F.3d 274, 279 (5th Cir. 2006), *abrogated by Wooden*, 142 S. Ct. 1063; *United States v. Taylor*, 413 F.3d 1146, 1157–58 (10th Cir. 2005).  These decisions, however, pre-dated the Supreme Court's ruling in *Mathis* (2016) emphasizing the limitation of judicial factfinding to elemental facts.  And all but two predated *Descamps* (2013), which rejected sentencing courts' reliance on the "prosecutorial theory of the case" and the "facts put forward by the government," even if found in "reliable materials," to impose an enhanced ACCA sentence. 570 U.S. 254, 265–66 (2013) (quotations omitted).  Neither of the Court of Appeals decisions that followed *Descamps* discussed the Supreme Court's reasoning in that case.

[5] Although precedent clearly permits district judges applying ACCA to examine prior-conviction documents such as judgments and plea agreements, those opinions largely ignore the historical basis that may justify sentencing judges taking judicial notice (of a fashion) of basic facts underlying prior convictions.  Whether similar practices coexisted with the jury-trial right is clearly a question whose importance continues to grow.

## B. Prior Convictions under ACCA and the Fifth and Sixth Amendments after *Wooden*

How much of this process changed as a result of *Wooden*? On the surface, none. Mr. Wooden forfeited any constitutional challenge to the sentencing judge's application of ACCA to his prior convictions. *Wooden*, 142 S. Ct. at 1068 n.3. The majority opinion didn't cite *Apprendi*, *Almendarez-Torres*, or any of the other "who decides?" precedents discussed above. Indeed, it didn't even discuss the source (plea colloquy, stipulations, indictment, and so forth) of the details on which the lower courts relied in applying longstanding Sixth Circuit precedent.

Rather, the task undertaken by the Court was to resolve a circuit split over whether "occasions" should be differentiated holistically or just chronologically. *Compare, e.g.*, *United States v. Bordeaux*, 886 F.3d 189, 196 (2d Cir. 2018) (examining holistic circumstances of different offenses), *with United States v. Carter*, 969 F.3d 1239, 1243 (11th Cir. 2020) (asking whether offenses were committed sequentially or simultaneously), and *United States v. Wooden*, 945 F.3d 498, 504–05 (6th Cir. 2019) (following circuit precedent endorsing this more formalist approach), *rev'd*, 142 S. Ct. 1063 (2022). The majority applied the "occasions" clause of § 924(e)(1) to the unusual facts of the state burglary offense(s) that preceded Mr. Wooden's subsequent federal prosecution for unlawfully possessing a firearm. *Wooden*, 142 S. Ct. at 1069–71.

Almost two decades before his felon-in-possession conviction, Wooden and three other individuals broke into and robbed ten storage units. *Id.* at 1067. All ten burglaries, however, happened on a single night, at a single storage facility, within a single structure. *Id.* Wooden and his confederates didn't even have to leave one unit before entering the next: by "crushing the interior drywall between them," Wooden "proceeded from unit to unit within the facility," stealing items from ten units. *Id.* (quotation omitted). He later pled guilty in Georgia state court to ten counts of burglary. *Id.*

Years later, a police officer entered Mr. Wooden's home and saw several guns. *Id.* The United States prosecuted him as a felon in possession, 18 U.S.C. § 922(g), and applied the ACCA enhancement requiring at least three ACCA-qualifying offenses "committed on occasions different from one another," § 924(e)(1).

The "ordinary meaning" of "occasion," according to the Supreme Court, is "essentially an episode or event." *Wooden*, 142 S. Ct. at 1069. "In many cases," the majority opinion explained, "a single factor—especially of time or place—can decisively differentiate occasions." *Id.* at 1071. That's why courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" *Id.* (quoting *United States v. Rideout*, 3 F.3d 32, 35 (2nd Cir. 1993)). Most cases "should involve no extra-ordinary work" because "it is usually not so difficult to identify an 'occasion.'" *Id.*

6

Sometimes, however, time and place aren't clearly dispositive.  In those unusual cases, determining whether a defendant's prior offenses occurred on different occasions depends on a "multi-factored" assessment of the times and places of the crimes *plus* the "character and relationship of the offenses." *Id.* at 1070–71. *Wooden* was one of those cases: although he burgled ten storage units, the offenses were linked by the same night, storage facility, "scheme," and "uninterrupted course of conduct." *Id.* at 1071.  So according to the Supreme Court they comprised a single occasion.   Although the Court characterized *Wooden* was an "easy" case that "involve[d] no extra-ordinary work," it acknowledged that this holistic, multifactored test "will produce some hard cases." *Id.* at 1071 n.4.

Post-*Wooden*, the Sixth Circuit has continued to authorize sentencing judges to use *Shepard* documents to find non-elemental facts when conducting a different-occasions inquiry.  In *United States v. Belcher*, the court cited Sixth Circuit precedent for the proposition that "the date of commission of an offense is so basic as to be implicit in the fact of a prior conviction," and held that the judge, rather than jury, decides the different-occasions question.  40 F.4th 430, 432 (6th Cir. 2022) (cleaned up) (quoting *Johnson*, 440 F.3d at 848).  And the Court of Appeals reached the same conclusion in both *United States v. Cook*, No. 22-5056, 2022 WL 4684595, at \*1 (6th Cir. Oct. 3, 2022), and *United States v. Williams*, 39 F.4th 342, 350 n.4, 351 (6th Cir. 2022) (defendant's "robberies were sufficiently separate in time and place that it is clear they occurred on separate occasions").  These decisions remain good law.  They cite *Wooden*.  And they leave district courts within this circuit to decide the different-occasions question at sentencing in ACCA prosecutions.

One *Wooden* concurrence, however, certainly calls this approach into question. Highlighting the fact-dependent nature of the majority's holistic inquiry, Justice Gorsuch expressed doubt that any different-occasions inquiry is sustainable under the *Apprendi* regime.  *Wooden*, 142 S. Ct. at 1087 n.7 (Gorsuch, J., concurring). Despite Mr. Wooden's Fifth and Sixth Amendment concession, that "constitutional question simmer[ed] beneath the surface" of his case.  *Id.*  "If a jury must find the *facts* supporting a punishment under the Occasions Clause beyond a reasonable doubt," asked Justice Gorsuch, "how may judges impose a punishment without equal certainty about the *law's* application to those facts?"  *Id.*

The Government apparently shares these concerns.  That's why it adopted the position it has here: asking courts to submit the different-occasions question to the jury in ACCA-eligible prosecutions.

The parties raise legitimate concerns that the multifactorial *Wooden* inquiry stretches the *Apprendi* / *Shepard* exception past its limits.  *See* Durham Objection (DN 137) at 2; Barnes Sentencing Mem. (DN 141) at 2.  It is hard enough to reconcile the notion that examining the "who, when, and where" of prior convictions, *King*, 853

F.3d at 274, falls within an exception for the mere fact of conviction. Even the precedents applying *Almendarez-Torres* have recognized this difficulty: although a "disputed fact … can be described as a fact about a prior conviction, it [may be] too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to … *Apprendi,* to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute." *Shepard*, 544 U.S. at 25 (rejecting judicial consideration of police and complaint documents in applying ACCA qualifying-offense provision). This concern is particularly salient for judges who worry that even the fact of conviction is one the Constitution requires a jury to find. *See id.* at 28 (Thomas, J., concurring).

These are important methodological questions that a court not otherwise bound by precedent must surely confront in the wake of the *Wooden* decision. But this judge *is* bound by the Supreme Court and Sixth Circuit decisions on all fours.

The Supreme Court has not (yet) reconsidered its position that the fact of a prior conviction may be examined by a judge consistent with the Fifth and Sixth Amendments. Nor has it reviewed decisions of the Sixth Circuit and other courts calling on judges at sentencing to examine the "who, when, and where" of prior convictions in order to apply ACCA. And those decisions obviously bind this Court—even if the Government and Defendants agree that a different rule might apply before long. Lower courts, after all, must follow binding Supreme Court precedent—not anticipate its reversal. *See Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989).

So when confronted with the request of Durham, Barnes, and the United States to reserve this question for a jury alone, this Court remained bound by precedent to deny that invitation. Yet the Sixth and other Circuits undoubtedly haven't heard the last word on this: the Government and Defendants alike plainly expect further litigation of these issues post-*Wooden.*

## II.   Applying *Wooden*

The sentencing hearings in this multi-defendant case show why. The convictions and criminal histories of the two defendants at issue, however, do not much resemble the unusual case of Mr. Wooden.

### A. This Prosecution

Local police arrested Nathaniel Durham, Phillip Barnes, and two other co-defendants after surveilling them heading from an apartment to a car with a total of 5 guns. All were convicted felons; none should've had a weapon. Police intervened and apprehended all of them before the situation developed further. Fortunately no one got hurt.

8

A federal grand jury indicted all four defendants. The Government charged Marquise Reyes and Jeremy Cosby with possessing a firearm despite a prior felony conviction. Indictment (DN 12) at 1–2, 4. Reyes was charged with an additional count of possessing fentanyl with the intent to distribute. *Id.* at 1.

Durham and Barnes were also charged with one count each of possessing a firearm while being a convicted felon. *Id.* at 2–3 (citing § 922(g)(1)). The indictment also cited § 924(e)(1)—the ACCA enhancement—on its first page and again in connection with the two counts charging Barnes and Durham with the felon-in-possession offense. *Id.* at 1. And the attached penalty page reflected the possibility that these defendants would face enhanced sentences under ACCA. *Id.* at 6. So both Defendants unquestionably had notice of the potential sentencing enhancement.

After their indictment but before their convictions, the Supreme Court decided *Wooden*. In light of that ruling, both Barnes (at his plea hearing) and Durham (at his final pretrial conference) argued that the question whether they committed at least three ACCA-qualifying offenses on different occasions was a question for the jury rather than a judge. They asserted that these are penalty-enhancing facts that (in Barnes's case) the defendant must admit in a plea agreement or (in Durham's case) a jury must find beyond a reasonable doubt. Barnes Sentencing Mem. at 2–4; Durham Objection at 2.

Even the Government, having lost *Wooden* on statutory grounds, apparently prepared for a future loss on constitutional grounds: it "conced[ed]" that under *Wooden* a jury, rather than a judge, must make the different-occasions finding for the ACCA enhancement to apply. Government Pretrial Memo. (DN 95) at 5. The Government also informed the Court, before Durham's trial, that "prosecutors have been … instructed to request a special verdict form in which the jury is required" to make the different-occasions finding, and suggested that the Court bifurcate Durham's trial to accommodate its position. *Id.* at 6. The Government also proposed an instruction, *see id.*, that would've asked the jury to "consider a variety of factors" in determining whether the prior burglary convictions were "distinct events, occurrences, or episodes":

> The government further alleges that the defendant committed the charged offense after having been convicted of three other crimes that were committed on occasions different from one another. Specifically, the government has presented evidence that the defendant has prior convictions for [list offenses]. You must determine whether those offenses were committed on different occasions. Crimes occur on different occasions when they are distinct events, occurrences, or episodes, rather than part of a single, uninterrupted course of conduct. In deciding whether the defendant's prior offenses occurred on different

occasions, you may consider a variety of factors, including the time, location, and character of the offenses.

At Durham's final pretrial conference, the Court denied the Government's requests to bifurcate the trial and submit the different-occasions inquiry to the jury. Based on the binding Sixth Circuit precedent discussed above, the Court determined that the ACCA question should instead be decided at sentencing. *See, e.g., Belcher,* 40 F.4th at 432; *Williams,* 39 F.4th at 351. Durham proceeded to trial, and the jury ultimately convicted him under § 922(g)(1).

In both Durham's and Barnes's presentence investigation reports, the U.S. Probation Office recommended that the Court apply ACCA's sentencing enhancement based on their respective criminal records. *See* Barnes PSR (DN 125) at 9; Durham PSR (DN 132) at 10. And at the Defendants' separate sentencing hearings, they both objected on the twin procedural grounds that the Fifth and Sixth Amendments required the indictment to charge them with having committed the offenses on different occasions, and required the jury to find beyond a reasonable doubt that the prior qualifying offenses occurred on different occasions. *See* Durham Objection at 2; Barnes Sentencing Mem. at 2. The Government agreed with that position in principle, but conceded that Sixth Circuit precedent requires the Court to make the different-occasions determination. *See, e.g., Cook,* 2022 WL 4684595, at *1 ("circuit precedent forecloses" the argument that different-occasions facts "should have been charged in the indictment and found by a jury beyond a reasonable doubt").

At the Defendants' respective sentencings, held a day apart, the Court applied the framework discussed in *Wooden.*

## B. Durham's Sentencing

Most of the 14 felonies listed in Durham's indictment were state-court convictions (all by plea) for burglary in the first or second degree. The indictment identified these convictions in the context of the Defendants' felon-in-possession charges, not specifically in connection with the ACCA enhancement. *See* Indictment at 3.

Durham had no substantive objection to a different-occasions finding, other than suggesting that the Government hadn't proved his dozen-or-so burglaries were not part of a "common scheme" as discussed in *Wooden.* Durham Objection at 10. He didn't argue these convictions reflected "a single criminal episode." *Wooden,* 142 S.Ct. at 1067. He simply sought to hold the prosecution to its burden.

The Government proffered so-called *Shepard* documents regarding Durham's prior convictions: certified state-court records, marked with the court's seal, including the "Judgment of Conviction and Sentence" and "Judgment on a Guilty Plea" for each of the burglaries listed in the indictment. Several of the guilty-plea judgments

incorporated the Commonwealth's specific plea offers, which included the dates and locations of the burglaries. Durham had signed and accepted those offer sheets. And the judgments expressly cited and incorporated them—ordering "that the Defendant's Plea of Guilty be accepted and entered as prayed in the Defendant's Motion to Enter Guilty Pleas and as recommended in the Commonwealth's Offer on a Plea of Guilty." *See, e.g.*, *Commonwealth v. Durham*, No. 11-CR-1839, Judgment on a Guilty Plea at 2. The Government also proffered, and the Court viewed, a video of Durham's plea colloquy. The video showed the state-court judge explain the underlying facts of the burglaries, including their dates, and Durham admit to those facts. To name a few, Durham confessed to having committed burglaries on the 9th, 15th, 20th, and 30th of October 2009, and on the 4th, 10th, 27th, and 28th of January 2011.[6]

The face of Durham's prior convictions make plain that the ACCA enhancement applies. They show that he had been convicted of numerous first- and second-degree burglaries under Kentucky law, almost all of which occurred on separate dates and in different locations.[7] The ACCA-qualifying offenses listed in the indictment include:

- First-degree burglary (October 9, 2009)
- Second-degree burglary (October 15, 2009)
- Second-degree burglary (October 20, 2009)
- Second-degree burglary (October 30, 2009)
- Second-degree burglary (October 19, 2010)
- Second-degree burglary (December 15, 2010)
- Second-degree burglary (January 4, 2011)
- Second-degree burglary (January 10, 2011)
- Second-degree burglary (January 27, 2011)
- First-degree burglary (January 28, 2011)

At sentencing, the Government relied primarily on three state-court convictions that covered multiple burglaries. A certified copy of the state-court judgment in case number 11-CR-2542 states that Durham pled guilty to burglary in September 2011 and was sentenced in January 2012. The Judgment on a Guilty Plea

---

[6] This distinguishes Barnes's and Durham's cases from the scenario that Judge Newsom confronted in the Eleventh Circuit's *Dudley* decision. *See Dudley*, 5 F.4th at 1268 (Newsom, J., dissenting in part). No one contests that Barnes and Durham both orally confirmed the facts of their prior convictions on the record during their plea colloquies. *See generally Apprendi*, 530 U.S. at 488 (if a defendant had "*admitted* the three earlier convictions ... no question concerning the right to a jury trial" would be implicated).

[7] Two occurred on the same day, but those were not among the prior convictions cited in Durham's indictment in this federal case.

in that case explicitly incorporated and attached the Commonwealth's plea offer, which Durham signed. The incorporated plea offer states that Durham burgled a residence on October 19, 2010.

The state-court records in case 11-CR-1340 are almost identical. The guilty-plea judgment incorporates the Commonwealth's plea offer, which Durham endorsed, regarding two counts of second-degree burglary. It states that Durham committed a burglary on December 15, 2010, and another on January 4, 2011.

The judgment papers in case number 11-CR-1839 similarly incorporate the Commonwealth's plea offer to Durham concerning one count of first-degree burglary. Durham signed the offer. It states that Durham committed first-degree burglary on January 28, 2011. And for good measure, a video of Durham's plea colloquy regarding these offenses showed the state-court judge recite the factual basis of the plea agreement—that Durham committed the burglaries on these dates—and Durham confirm as much.[8]

The substantial amount of time in between these burglaries is alone enough to find that Durham committed more than three ACCA-qualifying offenses on "occasions different from one another." *See Wooden*, 142 S. Ct. at 1071; *Williams*, 39 F.4th at 350. The locations, though all in Louisville, each differ from one another: 3422 Warner Avenue, 300 Iola Road, 109 Oxford Place, and 2119 Ann Marie Drive. And this not the sort of case, discussed in *Wooden*, in which multiple convictions amounted to a single "offense" because they "share[d] a common scheme or purpose." No evidence or argument indicates as much. And no one would ever say that multiple burglaries committed weeks, months, and years apart were committed on the same "occasion," even if the underlying conduct is similar. *Cf. Wooden*, 142 S. Ct. at 1069. This was hardly "a single uninterrupted course of conduct." *Id.* at 1071.

*Wooden*'s facts provide an apt contrast. That case involved a string of ten burglaries of ten connected storage units, meaning the crimes literally were "intertwined" with one another in some sense. *Id.* at 1067, 1071. They were "part and parcel of the same scheme." *Id.* Durham, on the other hand, committed burglaries in October 2010, December 2010, and January 2011—all in different locations. That Durham committed them so far apart in time surely indicates that even if they could be described as part of a common scheme, they were not committed on the same "occasion." Durham's ten burglaries, unlike Wooden's, don't amount to one "event or episode"—and certainly not one "occurrence." *Id.* at 1070.

---

[8] These hearings, like many in the Kentucky state courts, were recorded by video rather than transcribed.

## C. Barnes's Sentencing

The same largely holds true for Barnes, even if his prior burglary convictions aren't as numerous or diffuse.

Barnes's indictment noted ten prior felonies in total, four of which were ACCA-qualifying first-degree robbery convictions under Kentucky law. The same § 924(e)(1) and penalty-page references applied to his charge. Barnes ultimately pled guilty to the felon-in-possession charge. At his change-of-plea hearing, Barnes entered into an "open" plea with no written agreement. The plea colloquy made clear that ACCA's fifteen-year mandatory-minimum sentence might be imposed at the sentencing hearing.

During Barnes's sentencing hearing, like Durham's the day before, the Court reviewed the state-court judgments, the Commonwealth's plea offers, and footage of Barnes's state-court plea colloquy.

Barnes's ACCA-qualifying offenses include:

- First-degree robbery (August 6, 2008)
- First-degree robbery (August 18, 2008)
- First-degree robbery (August 31, 2008)
- First-degree robbery (June 11, 2009)

For case number 11-CR-2146, the Government introduced Barnes's state-court judgment, the Commonwealth's plea offer, and a video of Barnes's plea colloquy. The Amended Judgment of Conviction states that Barnes pled guilty to four counts of first-degree robbery and one count of first-degree wanton endangerment. The attached plea offer, signed by Barnes, states that he robbed three different Family Dollar stores on the four days listed above.

The main difference between the Barnes and Durham records is that Barnes's judgments don't expressly incorporate his offer sheet. So the narrative of the facts underlying the guilty plea and conviction (though signed by Barnes) was somewhat less clear from the material found within the four corners of the written judgment.

But the footage of Barnes's plea colloquy brings the picture into focus. In that video the state-court judge read the facts underlying Barnes's guilty plea, including the dates and locations of his four robberies. The state-court judge asked if Barnes agreed to the factual basis for his plea. Barnes said yes.

Under the binding Sixth Circuit precedent discussed above, this information is available for a sentencing judge to examine in the ACCA context. A "plea colloquy transcript is a *Shepard*-approved document that the court may examine in a different-occasions analysis" if the defendant "admit[s] under oath that the factual basis proffered" in a plea offer is true. *Hennessee*, 932 F.3d at 444 n.4. So the

Government was free to introduce, and the Court was free (and likely obliged) to consider, these judicial records indicating Barnes agreed that he committed four different robberies on four different dates. *Id.* at 442, 444 & n.4.[9]

Because Barnes robbed the Family Dollar stores over a period of weeks and months, the offenses occurred on "occasions different from one another." § 924(e)(1); *see also Williams*, 39 F.4th at 350. Is it plausible that Barnes's repeated targeting of the same chain of neighborhood convenience store was part of a "common scheme"? *See Wooden*, 142 S. Ct. at 1071. Possibly—although nothing in the record before the Court indicates anything connected the burglaries other than the store brand and the city. What is *not* plausible, given ordinary English usage and the interpretation set forth in *Wooden*, is saying that Barnes robbed three Family Dollars on a single "occasion" that stretched across 25 days in August 2008. To paraphrase the Supreme Court, no "reporter, police officer, or even lawyer"—indeed, not even Barnes's own— would ever say: "On one occasion, Barnes burglarized three convenience stores." That would not "us[e] language in its normal way." *Id.* at 1069 (cleaned up).

\* \* \*

Because Durham and Barnes each committed at least three ACCA-qualifying offenses on occasions different from one another, and because the Court rejected their constitutional arguments discussed above, the Court applied the ACCA enhancement and sentenced them to the mandatory minimum of 180 months' imprisonment.

---

[9] At his sentencing hearing, Barnes argued that the Court could not rely on the plea colloquy video because Kentucky state courts "spea[k] through the language of [their] orders and judgments." *Glogower v. Crawford*, 2 S.W.3d 784, 785 (Ky. 1999) (citing CR 54.01). But that's just an application of the rule that "[w]hen there is an inconsistency between oral statements of a court and an order reduced to writing, the latter must prevail." *Commonwealth v. Taber*, 941 S.W.2d 463, 464 (Ky. 1997), *overruled on other grounds by Keeling v. Commonwealth*, 381 S.W.3d 248 (Ky. 2012). Here, Barnes's plea colloquy isn't inconsistent with the state-court judgment. And the first page of the judgment expressly cited and arguably incorporated the plea colloquy, stating that Barnes pled guilty and that the "proceeding was reported by digital recording n. 30-01-13-VR-115." *Commonwealth v. Barnes*, No. 11-CR-2146, Amended Judgment of Conviction at 1. That is the video the federal prosecutors introduced at Barnes's sentencing hearing. In any event, a "plea colloquy transcript is a *Shepard*-approved document that the court may examine in a different-occasions analysis." *Hennessee*, 932 F.3d at 444 n.4. Barnes "admitted under oath that the factual basis proffered by" the Commonwealth's plea offer "was true," so the Court could rely on the colloquy in making the different-occasions determination. *Id.* And Barnes didn't argue that a plea colloquy video is somehow legally distinct from a plea colloquy transcript for *Shepard* purposes. Nor is it apparent why direct observation of a recording would be less probative and reliable than a third party's transcription of an unobserved recording.

### III.     Questions Raised Post-*Wooden*

The sentencing hearings in this case validate aspects of the parties' concerns with the Sixth Circuit's approach to the different-occasions inquiry under *Apprendi*. In some circumstances, at least, *Wooden*'s "multi-factored" approach may invite judicial factfinding that goes beyond the simple fact of a prior conviction. *See* Durham Objection at 6.  Names, dates and places are one thing; binding caselaw "requires" a court to examine *Shepard* documents to "identify the who, when, and where of the prior offenses." *King*, 853 F.3d at 274; *see also Belcher*, 40 F.4th at 432.  "[T]hese facts," the Sixth Circuit has held, "are so basic as to be implicit in the fact of a prior conviction." *Johnson*, 440 F.3d at 848 (quotation omitted).  And they will typically suffice under ACCA.  As the Supreme Court majority recognized in *Wooden*, the when and where will typically prove dispositive.  Often offenses committed "a day or more apart" can "decisively differentiate occasions." *Wooden*, 142 S. Ct. at 1071.  And of course in many instances the facts won't reasonably be disputed: the jury findings may indicate the defendant committed an offense "on or about" a given date at a given location or within a particular jurisdiction.

But *Wooden* adopted a holistic inquiry—one that seemingly requires the factfinder, at least in close cases, to balance factors and weigh facts that weren't admitted by the defendant or found by a jury.  This analysis differs from simply skimming a plea colloquy transcript to determine whether a defendant admitted to committing a violent felony on a particular date. *Wooden* is the first time the Supreme Court has held as much in the different-occasions context.  And its analysis sits uneasily alongside the Supreme Court's statements about what judges may and may not do in the ACCA violent-felony context.  Wooden appears to *require* the factfinder to look at non-elemental facts.  Yet the Court, in decisions like *Mathis*, has explicitly said judges may not do that in the violent-felony context: The sentencing judge "can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." 579 U.S. at 511–12.

The "basic" nature of these when-and-where issues may prop up the *Shepard* regime for judicial different-occasions determinations—at least in cases like Barnes's and Durham's.  Here the Court needn't look any further than the "when" identified in the judgment and plea documents.  That alone determines that each of Durham's burglaries and each of Barnes's robberies were separated by a substantial amount of time—days, weeks, and months—and therefore "committed on occasions different from one another." § 924(e)(1); *Williams*, 39 F.4th at 350–51 (collecting cases).[10]

---

[10] In Durham's case, the Court arguably doesn't have to go beyond the four corners of his state-court judgments, which incorporate by reference the Commonwealth's plea offer stating the date on which the burglaries occurred.  As far as the "fact of a prior conviction" goes, this approach is easier to defend than reviewing a plea colloquy to determine whether a defendant

One can imagine, however, other cases that might require a judge applying ACCA to go beyond the mere "fact[s] of a prior conviction." *Johnson*, 440 F.3d at 848 (quotation omitted). The Supreme Court parsed Mr. Wooden's ten burglaries of ten storage units to resolve that Occasions Clause disagreement on a closed appellate record. *See* Brief of Appellant William Wooden, *Wooden*, 495 F.3d 498, No. 19-5189, 2019 WL 2193538, at *20 ("From the limited information that we can glean from the indictment and judgment in this case, we know that the burglaries in question all occurred during the same criminal episode at the same business location. Otherwise, the facts of Mr. Wooden's case are far from clear."). Would the facts—and therefore the sources—prove any clearer if a defendant had committed a burglary, robbery, and arson on the same day, but in different parts of the same city? What if a burglar assaulted an officer in pursuit? *Id.* at 1080 (Gorsuch, J., concurring). *Wooden* calls on the factfinder to run those factors through a holistic and multi-factor test to determine if the three offenses were committed on less than three occasions. The existence of "a common scheme or purpose" may or may not be evident on the face of a judgment or in the text of a plea colloquy. *Id.* at 1071. And even if the (non)existence of a scheme is apparent, a sentencing judge must weigh that along with whatever the record establishes regarding temporality and proximity. *Id.*

This version of judicial factfinding is a far cry from acknowledging the simple existence of a sentence-enhancing prior conviction, likely proved through a self-authenticating official record not subject to any hearsay exception or meaningful confrontation. *Almendarez-Torres*, 523 U.S. at 226–27. We have wandered quite a ways from treating "ACCA … as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none." *Descamps v. United States*, 570 U.S. 254, 268 (2013).[11] Though—again—it's worth emphasizing that even this

---

assented under oath to the time, place, and nature of the underlying offenses. As discussed above, however, binding precedent permits both. *Hennessee*, 932 F.3d at 442.

[11] Justice Kagan's opinion for the Court in *Descamps* discussed the modified-categorical approach in terms that sound oddly prescient when considered in the Occasions Clause context. The lower court's approach, she explained, raised

> the same daunting difficulties and inequities that first encouraged us to adopt the categorical approach. In case after case, sentencing courts … would have to expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy, or a prosecutor showed at trial, facts that, although unnecessary to the crime of conviction, satisfy an element of the relevant generic offense. The meaning of those documents will often be uncertain. And the statements of fact in them may be downright wrong. A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense—and may have good reason not to. At trial, extraneous facts and arguments may confuse the jury. (Indeed, the court may prohibit them for that reason.) And during plea hearings, the defendant may

limited exception was and remains itself a controversial limitation of (or hole within[12]) our foundational right to trial by jury. "The problem," as the Supreme Court recognized in *Shepard*, "is that what the state court has been required to find [in an earlier conviction] is debatable." 544 U.S. at 25 (quotation marks omitted).

None of which is to say that giving ACCA occasions questions to juries is a terribly attractive alternative.

*First*, it's textually anomalous. Even though the questions arise from the same sentence in the same statute, the Government's position would assign the different-occasions question to the jury but the violent-felony determination to the judge. Why would parallel requirements set out by Congress in the same statutory provision be addressed by different decisionmakers within the same proceeding? As the Sixth Circuit has noted, nothing indicates that Congress intended juries to decide one question but not the other. *See Hennessee*, 932 F.3d at 443; Note, *The Occasions Clause Paradox*, 136 HARV. L. REV. 711, 716–19 (2022). This would inevitably further complicate the already complicated ACCA regime. *See* above n.1. Given the tortured history of this statute, no one should too hastily cast aside the regime of *Shepard* documents and modified-categorical analysis without knowing what would replace it. *Cf. Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1882–83 (2021) (Barrett, J., concurring) (counseling caution before replacing a problematic known with a potentially more problematic unknown).

*Second*, the alternative approach risks significant jury confusion. The Government's proposal offers little reassurance that juries will be able to apply the *Wooden* different-occasions inquiry without confusion or error.

The state-court documents the Court examined at sentencing were lengthy, unfamiliar, and nonuniform. Most include antiquated legal jargon difficult to understand for a lawyer, let alone a lay juror. The videotaped plea colloquies were arguably even less accessible. Might a clear instruction clarify and simplify the jury's task? Not under the holistic *Wooden* analysis, anyway. Recall the open-ended legal inquiry the Government proposed to ask the jury:

> You must determine whether those offenses were committed on different occasions. Crimes occur on different occasions when they are distinct events, occurrences, or episodes, rather than part of a single,

---

not wish to irk the prosecutor or court by squabbling about superfluous factual allegations.

570 U.S. at 270 (citations and quotations omitted).

[12] *See, e.g.*, *Mathis*, 579 U.S. at 522–23 (Thomas, J., concurring) ("the exception in *Apprendi* was wrong").

uninterrupted course of conduct. In deciding whether the defendant's prior offenses occurred on different occasions, you may consider a variety of factors, including the time, location, and character of the offenses.

Government Pretrial Mem. at 6.

Remember, the numerous convictions and separate dates of Durham's and Barnes's burglaries make this prosecution a relatively *easy* application of *Wooden*. In a closer case, what "variety of factors" might a creative defense lawyer invite lay jurors to consider when poring over old state-court documents during deliberations? Would a well-crafted post-trial motion give defendants two chances at avoiding the enhancement—one by arguing specific legal technicalities to the judge, and another by arguing a "variety of factors" to the jury? The Government's proposed instruction would risk juror confusion about at least three cases *besides* the one for which the defendant was then on trial. Those weary jurors would be asked to sift through potentially impenetrable state-court judgments, plea colloquy transcripts, and other comparable records, aided only by a totality-of-the-circumstances jury instruction incorporating *Wooden*'s multi-factored test.

*Third*, it's unclear that defendants would be better off with a jury-determined different-occasions inquiry, either. These voluminous state-court records are not easy on the eyes. Exposing jurors to a defendant's prior convictions poses obvious risks of prejudice. *See Occasions Clause Paradox*, 136 HARV. L. REV. at 724; *Almendarez-Torres*, 523 U.S. at 234–35. Bifurcating a trial between guilt and ACCA phases is one potential solution—though not without its own costs. A jury that returns to the courtroom after finding guilt in phase one (perhaps now surprised to learn it has more work to do) must wade through substantial evidence of multiple prior convictions to answer the different-occasions question. Might some look at a defendant's numerous violent felonies and drug-related crimes and find themselves tempted to presume that the occasions requirement is met? Courts typically strive to prevent juror prejudice, not foster it. *See, e.g.*, *Old Chief v. United States*, 519 U.S. 172, 180–81 (1997).

*Fourth*, and finally, the jury alternative sits uncomfortably alongside our bedrock rules of federalism and finality. *Cf. Keeney v. Tamayo-Reyes*, 504 U.S. 1, 20 (1992) (O'Connor, J., dissenting) ("Federalism, comity, and finality are all advanced by declining to permit relitigation of claims in federal court in certain circumstances."). These complications reach beyond the immediate federal § 922(g) prosecution and implicate the underlying convictions—often obtained in state rather than federal court. If a federal jury pops the hood of a state-court judgment and tinkers with its underlying fact-finding and procedural output, does this foster the "finality and respect" for state-court judgments "necessary to preserve the integrity

18

of legal proceedings within our system of federalism"? *Shinn v. Ramirez*, 142 S. Ct. 1718, 1737 (2022) (quotation omitted).

True, these risks to federalism and finality are always present when a felon-in-possession, illegal-reentry, or some other federal charge implicates a prior state or federal proceeding. And those risks exist whether a federal jury or a federal judge is the one poking around. But ACCA can ask a lot more than most statutes, particularly after *Wooden*. *See* 142 S. Ct. at 1087 n.7 (Gorsuch, J., concurring); *see also Dudley*, 5 F.4th at 1275–77 (Newsom, J., dissenting in part). Since *Taylor* and *Shepard*, judges have grown at least somewhat accustomed to a limited examination of prior state-court convictions. Juries have not had the occasion to do so. And the instruction proposed by the Government would prompt the jury to engage in a factfinding exercise that reexamines events *already passed on* by a prior jury or admitted by a defendant. This runs contrary to the normal sensitivity with which federal courts approach state judicial functions. *Cf. Younger v. Harris*, 401 U.S. 37, 44 (1971).

\* \* \*

Is the answer to throw over the Bill of Rights or the statutory text to avoid these pragmatic concerns? Not at all. Rather, the point is to recognize the complicated apparatus courts have developed for ACCA qualifying-offense determinations under the *Shepard* line—and think twice before building an entirely separate mousetrap for different-occasions determinations. The Government has apparently already picked this option, and maybe its prediction about precedent will prove right.

A more familiar form of constitutional avoidance remains available to the Government, of course: prosecutorial discretion. The Government's concerns regarding reversal risk are understandable, but in some sense these are concerns of its own making. The judge doesn't decide whether to seek the ACCA enhancement. If the United States truly believes that the sentencing exercise described above violates a defendant's Fifth and Sixth Amendment rights, should it be pursuing the ACCA enhancement in the first place? Given the uncertainty *Wooden* creates in close cases, perhaps the Government should pause before seeking an ACCA enhancement if prior convictions, on their face, don't make clear that the defendant is an armed career criminal. And if the United States maintains that at least *some* documents remain fair game for a district judge to consider under *Apprendi, Almendarez-Torres, Shepard,* and *Wooden,* then why not fully brief and litigate the question based on those records so the issue is squarely presented—sooner than later—in the courts of appeals? Perhaps this will increase the difficulty of securing felon-in-possession convictions and sentencing enhancements. Then again, perhaps it shouldn't be easy to tack on 15 years' imprisonment to a gun charge for past convictions in different jurisdictions. The ultimate responsibility for reconciling sentencing enhancements

19

and the Constitution, of course, rests with Congress for trying to balance a heavy federal sentencing enhancement atop stacks of aging and ambiguous prior convictions. *See generally Mathis*, 579 U.S. at 520.

In the meantime, the courts are left to face complicated procedural questions without even the benefit of adversarial briefing. That could've helped a great deal in an important case like this one. It could also help the defendants and prosecutors relying—without much confidence—on binding caselaw that the Government has shied away from. And it will certainly be necessary to sharpen the arguments on both sides that this opinion merely begins to collect above.

## CONCLUSION

Whatever uncertainties *Wooden* and *Apprendi* auger regarding ACCA's Occasions Clause, none alter the outcome here. Binding precedent requires the Court, not the jury, to consider Durham's and Barnes's past convictions. And the analysis set forth in *Wooden* makes clear that ACCA's mandatory-minimum sentence applies based on their multiple prior burglaries committed on separate occasions.

Benjamin Beaton, District Judge
United States District Court

February 11, 2023